BOARD OF COM'RS OF LAKE COUNTY v. PLATT.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1897.)

No. 803.

1. BONDS ISSUED TO PAY JUDGMENTS CREATE NO DEBT.
   The issue of municipal bonds in satisfaction of a valid judgment against a municipality does not create a debt; it merely extends the time for its payment.

2. HOLDERS OF SUCH SECURITIES ARE IN PRIVITY WITH THE JUDGMENT CREDITOR.
   The holder of coupons cut from county bonds issued in satisfaction of a judgment is the owner of a part of the same debt evidenced by the judgment itself, and is in privity with the judgment creditor. In an action upon the coupons he may invoke every presumption and estoppel in support of his claim which the judgment creditor could call to his aid in an action upon the judgment.

3. JUDGMENT—COLLATERAL ATTACK.
   The judgment of a court which had jurisdiction of the subject-matter and of the parties to the action is not void, nor can it be successfully attacked collaterally, either because it was erroneous, or because it was obtained by fraud and collusion.

4. JURISDICTION OF COURT—TEST.
   The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry; not whether its conclusion in the course of it was right or wrong.

5. JUDGMENT—EXTENT OF ITS ESTOPPEL BETWEEN THE SAME PARTIES.
   In an action between the same parties, or those in privity with them, upon the same claim or demand, the prior judgment upon the merits is conclusive, not only as to every matter offered, but as to every admissible matter which might have been offered to sustain or defeat the claim or demand.

6. JUDGMENT BY DEFAULT—EFFECT.
   A judgment by default is as conclusive an estoppel upon all questions, the decision of which was necessary to the rendition of the judgment, as a judgment after contest and trial.

7. JUDGMENT UPON CONTRACT DETERMINES THE POWER OF A DEFENDANT COR-
PORATION TO MAKE THE CONTRACT.

In the rendition of every judgment against a corporation upon a contract, the court necessarily determines the question whether or not the corporation had power to make the contract.

8. CONSTITUTIONAL LIMITATION—JUDGMENT CONCLUDES QUESTION OF POWER TO CREATE DEBT THEREUNDER.

In an action to enforce the collection of bonds or coupons issued in payment of a judgment entered by default against a municipal or quasi municipal corporation, the judgment conclusively estops the corporation from making the defense that the indebtedness evidenced by the judgment was in excess of the amount which the corporation had the power to create under the limitations of the constitution of the state in which it was incorporated.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

This writ of error was sued out to reverse a judgment in favor of George W. Platt, the defendant in error, and against the board of county commissioners of the county of Lake, the plaintiff in error, upon certain coupons cut from judgment bonds issued by that corporation. The complaint contained allegations that on April 16, 1891, a judgment for $60,000 was rendered against the plaintiff in error in favor of Daniel E. Parks, in the district court of Arapahoe county, in the state of Colorado; that the plaintiff in error, in pursuance of an act of the legislature of Colorado, approved April 17, 1889, which provided that "the board of county commissioners of any county in this state, against which a judgment has been or may be rendered in any of the courts of record in this state, may issue its bonds in satisfaction of such judgment and accrued interest thereon, dollar for dollar; such bonds to draw interest at not to exceed eight per centum per annum" (Sess. Laws Colo. 1889, pp. 31, 32, § 2), issued certain bonds and coupons in satisfaction of this judgment; that the defendant in error was the owner of certain of these coupons, and that they were past due, and unpaid. The plaintiff in error, by its answer, disclosed the facts that the judgment was rendered in favor of Parks and against the plaintiff in error in the district court of Arapahoe county on account of services, which he alleged in his complaint in that action he had rendered to the board of county commissioners of Lake county at various times between May 18, 1883, and March 28, 1890; that the summons in that action had been served, and that the board had duly appeared in it by the county attorney of the county of Lake before the judgment was rendered, but that it had not answered the complaint, and that the judgment had been taken by default. It alleged that it did not in fact owe Parks anything on account of services, or on any account, when that judgment was rendered; that the judgment was rendered, and the bonds were issued to pay it, in pursuance of a fraudulent and collusive agreement between Parks and the board that the latter should permit the judgment to be entered by default, and should issue its bonds, and that its members should receive a part of these bonds as compensation for permitting the judgment to be rendered. The answer contained the further plea that the original debt evidenced by the judgment, the judgment itself, and the bonds issued to pay it were all void, because they created an indebtedness in excess of that authorized by section 6, art. 11, of the constitution of Colorado, which reads: "No county shall contract any debt by loan in any form except for the purpose of erecting necessary public buildings, making or repairing public roads or bridges; and such indebtedness contracted in any one year shall not exceed the rates upon the taxable property in such county following, to wit: Counties in which the assessed valuation of taxable property shall exceed five millions of dollars, one dollar and fifty cents on each thousand dollars thereof; counties in which such valuation shall be less than five millions of dollars, three dollars on each thousand dollars thereof, and the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above herein limited,

unless when in manner provided by law, the question of incurring such debt shall, at a general election, be submitted to such of the qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed to them in such county, and a majority of those voting thereon shall vote in favor of incurring the debt; but the bonds, if any be issued therefor, shall not run less than ten years, and the aggregate amount of debt so contracted shall not at any time exceed twice the rate upon the valuation last herein mentioned: provided, that any county in this state which has an indebtedness outstanding, either in the form of warrants issued for purposes provided by law prior to December 31, A. D. 1886, or in the form of funding bonds issued prior to such date for such warrants previously outstanding, or in the form of public building, road or bridge bonds outstanding at such date, may contract a debt by loan by the issuance of bonds for the purpose of liquidating such indebtedness, providing the question of issuing said bonds shall, at a general or special election called for that purpose, be submitted to the vote of such of the duly qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed in such county, and the majority of those voting thereon shall vote in favor of issuing the bonds. Such election shall be held in the manner prescribed by the laws of this state for the issuance of road, bridge and public building bonds, and the bonds authorized at such election shall be issued and provision made for their redemption in the same manner as provided in said law." The court below sustained a demurrer to this answer, and rendered a judgment against the county.

George R. Elder, for plaintiff in error.

H. B. Johnson, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The prohibition of the constitution of Colorado is against the creation of a debt in excess of the limit there prescribed. If the Parks judgment against the board of county commissioners of Lake county on April 16, 1891, evidenced a valid indebtedness of that county, the issue of the bonds from which the coupons in suit were cut in payment of that judgment was not the creation of a debt, and did not fall under the ban of the constitution. It was but the extension of the time of payment of a debt already existing and due, pursuant to plenary authority given to the board of county commissioners by the legislature of Colorado. Sess. Laws Colo. 1889, pp. 31, 32. Nor could the validity of the bonds be affected by any fraudulent agreement as to their issue, if the judgment evidenced a valid debt, because the judgment was satisfied by the delivery of the bonds. There is no claim that the county sustained any loss or injury by the mere extension of the time of the payment of the debt, and fraud without damage constitutes no cause of action, and no defense to a legal claim. Counsel for the plaintiff in error is thus driven to maintain the position that the judgment in favor of Parks was void, as a basis for his contention that the bonds created a debt. His complaint of the court below accordingly is that it should have held that the judgment in favor of Parks was void, because the debt evidenced by it was in excess of the limit prescribed by the constitution, and because it was procured by collusion and fraud. Let us consider the grounds of this

complaint in their order. The first contention is that the fact that the amount of the debt evidenced by the Parks judgment was in excess of the constitutional limitation rendered that judgment void, because the board had no power to incur such a debt, and the district court of Arapahoe county had no power to hold that such a debt did exist. The soundness of this position depends upon the jurisdiction of that court to hear and determine the question whether or not the board of county commissioners of Lake county had authority to create a debt to Parks for $60,000 for his services during the series of years named in his complaint. Judgments of courts within the scope of their power to hear and determine are not void, whether right or wrong, and they are impregnable to collateral attack; but judgments of courts in cases beyond the scope of their power to hear and determine are nullities. Had the district court of Arapahoe county, by the law of its organization, authority to hear and decide the question of the power of the board under the constitution of Colorado to incur the debt of $60,000 to Parks? The powers of every corporation are limited. No corporation has the power to do every act or to make every contract which an individual can do or make. Hence, whenever a corporation seeks to do an act by means of the judgment of a court, or is charged in a court with default in the performance of one of its contracts, the first question the court must hear and determine is whether the act or contract was within the powers vested in the corporation through its franchise. Nor does the rightfulness of its decision of this question affect the conclusiveness of its judgment. We had occasion to examine this matter with some care in Foltz v. St. Louis & S. F. Ry. Co., 19 U. S. App. 576, 8 C. C. A. 635, and 60 Fed. 316. In that case the railway corporation, which had no power whatever to condemn land in the state of Arkansas, had obtained a judgment of condemnation of a tract of land in that state in an action in which the defendant appeared, but did not plead the want of the power of eminent domain in the corporation. After the railway company had taken possession of the land condemned, the defendant brought an action of ejectment for it, and the railway company brought a bill to enjoin that action. It was argued in that case, as it is in this, that since the court erroneously decided that the corporation had the power which it never did have, and inasmuch as the existence of that power lay at the foundation of the right to the judgment, that judgment was void. Our conclusion was expressed in these words:

"Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong; and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error

or appeal, or impeached for fraud. Insley v. U. S., 14 Sup. Ct. 158; Cornett v. Williams, 20 Wall. 226; Des Moines Nav. & R. Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217; In re Sawyer, 124 U. S. 200, 221, 8 Sup. Ct. 482; Skillerns v. May's Ex'rs, 6 Cranch, 267; McCormick v. Sullivant, 10 Wheat. 192; Hunt v. Hunt, 72 N. Y. 217; Colton v. Beardsley, 38 Barb. 30, 52; Otis v. The Rio Grande, 1 Woods, 279, Fed. Cas. No. 10,613; Hamilton v. Railroad Co., 1 Md. Ch. 107; Evans v. Haefner, 29 Mo. 141, 147; State v. Weatherby, 45 Mo. 17; Rosenheim v. Hartsock, 90 Mo. 357, 365, 2 S. W. 473; State v. Southern Ry. Co., 100 Mo. 59, 13 S. W. 398; Hope v. Blair, 105 Mo. 85, 93, 16 S. W. 595; Musick v. Railway Co., 114 Mo. 309, 315, 21 S. W. 491. Wherever the right and the duty of the court to exercise its jurisdiction depend upon the decision of the question it is invested with power to hear and determine, there its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud."

The action which Parks brought against the plaintiff in error was a simple action upon contract. The court in which he brought it was a court of general jurisdiction of the state in which the parties resided, and in which the contract was made. The power of that court to hear and determine every question essential to the disposition of that action is beyond question. In every action for damages for the failure of a corporation to perform a contract, the court must decide these four questions before it can enter a judgment for the plaintiff: First. Had the corporation the power to make the agreement? Second. Did it make it? Third. Has it performed it? Fourth. What is the amount of the damages? The district court of Arapahoe county necessarily decided the first three of these questions in the affirmative, and found the damages to be $60,000, before it entered the judgment for Parks. It was its right and its duty to determine these questions, and it did so. If its decision was erroneous, its judgment could be reversed on appeal. But its determination of the question, which the plaintiff in error is seeking to retry in this case, was the exercise by that court —and the rightful exercise—of its jurisdiction; and, whether its decision was right or wrong, it cannot be successfully attacked in this collateral proceeding.

Counsel for the plaintiff in error makes another attempt to escape from the effect of this judgment on the ground that it does not estop the board from showing in this action that the debt it evidenced was in excess of the constitutional limitation, because that defense was not pleaded in the original action, because the judgment in that action was by default, and because the parties and the demand in controversy are not the same in this case as they were in that case. The settled rule upon this subject was so clearly stated in the leading case of Cromwell v. County of Sac, 94 U. S. 351, 352, that it has been universally followed in the courts of the United States. It is that in an action between the same parties, or those in privity with them, upon the same claim or demand, a judgment upon the merits is conclusive, not only as to every matter offered, but as to every admissible matter which might have been offered to sustain or defeat the claim or demand. But in a case in which the second action is upon a different claim or demand, the prior judgment is an estoppel as to those matters in issue or points of controversy upon the determination of which

the finding or verdict was rendered. In Dickson v. Wilkinson, 3 How. 57, 61, Mr. Justice McKinley, in delivering the opinion of the supreme court, said: "It is a universal rule of law that if the party fail to plead matter in bar to the original action, and judgment pass against him, he cannot afterwards plead it in another action founded on that judgment." In Dimock v. Copper Co., 117 · U. S. 559, 565, 6 Sup. Ct. 855, the defendant procured his discharge in bankruptcy five days before a judgment was rendered against him in a state court of Massachusetts, but he did not plead it, or call it to the attention of that court. To an action upon this judgment · brought in a state court of New York he pleaded this discharge. The supreme court held that his failure to plead it in the original action, and the original judgment against him in Massachusetts, estopped him from presenting the discharge as a defense in the action upon that judgment in New York, although it was a perfect defense to the original debt. In Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 691, 15 Sup. Ct. 733, the supreme court declared that "a judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest." If, therefore, Parks or his assignees had sued the plaintiff in error upon his judgment, or upon the debt which it evidenced, that judgment would have conclusively estopped the plaintiff in error from making the defense that its indebtedness was in excess of the constitutional limitation. But this action is upon a part of the same debt represented by that judgment. The bonds and coupons issued in satisfaction of the judgment evidence the same indebtedness that the judgment represented, and the holder of each bond and of each coupon is, in legal effect, an assignee of the debt pro tanto. Thus the defendant in error is in privity with Parks, and is entitled to invoke every presumption and every estoppel in support of his claim which Parks could have called to his aid if he had brought this action upon his judgment. Iron Co. v. Eells, 32 U. S. App. 348, 15 C. C. A. 189, 201, and 68 Fed. 24, 36. Our conclusion is that in an action to enforce the collection of a judgment or the collection of bonds or coupons issued in payment of a judgment against a municipal or quasi municipal corporation, the judgment conclusively estops the corporation from making the defense that the original indebtedness evidenced by it was in excess of the amount which the corporation had the power to create, under the limitations of the constitution of the state in which it was incorporated. Biddle v. Wilkins, 1 Pet. 686, 692; Dickson v. Wilkinson, 3 How. 57, 61; U. S. v. New Orleans, 98 U. S. 381, 395; Davenport v. County of Dodge, 105 U. S. 237; Louisiana v. St. Martin's Parish, 111 U. S. 716, 4 Sup. Ct. 648; Boynton v. Ball, 121 U. S. 457, 461, 7 Sup. Ct. 981; Franklin Co. v. German Sav. Bank, 142 U. S. 93, 101, 12 Sup. Ct. 147; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 691, 15 Sup. Ct. 733; Cutler v. Huston, 158 U. S. 423, 15 Sup. Ct. 868; Breeze v. Haley, 11 Colo. 351, 355, 18 Pac. 551; Water Co. v. Middaugh, 12 Colo. 434, 21 Pac. 565; Board v. Burpee (Colo. Sup.; decided in 1897)

48 Pac. 539; Aetna Life Ins. Co. v. Lyon Co., 44 Fed. 329, 344; U. S. v. Board of Auditors, 28 Fed. 407; Railroad Co. v. Baker (Wyo.) 45 Pac. 494, 501; State v. Gloyd (Wash.) 44 Pac. 103; Sioux City & St. P. R. Co. v. Osceola Co., 45 Iowa, 168, 175; Id., 52 Iowa, 26, 2 N. W. 593; Edmundson v. School Dist. (Iowa) 67 N. W. 671; Howard v. City of Huron (S. D.) 59 N. W. 833, 834; Id., 60 N. W. 803, 805. The cases of Commissioners v. Loague, 129 U. S. 493, 503, 505, 9 Sup. Ct. 327, and Kelly v. Town of Milan, 21 Fed. 842; Id., 127 U. S. 139, 8 Sup. Ct. 1101,—are not in conflict with this conclusion. The opinion and the effect of the decision in the former case are explained and limited in Franklin Co. v. German Sav. Bank, 142 U. S. 93, 100, 12 Sup. Ct. 147. The latter case rests upon the proposition that the decree invoked was based upon an agreement of compromise by which the municipality contracted to admit the validity of certain bonds which it never had the power to issue, and the court held that the agreement was as void, for want of power, as were the bonds, and that, as there was no adjudication by the court of the validity of the bonds, the decree was not an estoppel upon the municipality from contesting them.

A single question remains: Was the fact, pleaded in the answer, that the judgment in favor of Parks was obtained by fraud and collusion, an avoidance of that judgment, or a defense to this action? No fraud was alleged which deprived the board of notice of the suit and of ample time to answer the petition of Parks therein before the judgment was rendered. A direct suit may undoubtedly be maintained in a proper case, to set aside a judgment for fraud in procuring it. Gaines v. Fuentes, 92 U. S. 10, 21; U. S. v. Norsch, 42 Fed. 417; 1 Black, Judgm. § 321, and cases cited. But until such a suit is brought, and until such a decree of avoidance is rendered, the judgment of a state court which had jurisdiction of the subject-matter and of the parties is conclusive upon the merits of the controversies determined by that judgment between the parties and their privies in every court of the United States, and such a judgment cannot be collaterally impeached for fraud or collusion. Iron Co. v. Eells, 32 U. S. App. 348, 15 C. C. A. 189, 201, and 68 Fed. 24, 35; Christmas v. Russell, 5 Wall. 290, 305; Maxwell v. Stewart, 22 Wall. 77, 81; Anderson v. Anderson, 8 Ohio, 108; Mason v. Messenger, 17 Iowa, 261, 272; Smith v. Smith, 22 Iowa, 516, 518; Railway Co. v. Hall, 37 Iowa, 620, 622. Moreover, this defense of fraud and collusion was barred by the statute of limitations. The judgment in favor of Parks was rendered in 1891. The statutes of Colorado provide that "bills for relief on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards." 2 Mills' Ann. St. Colo. 1891, p. 1641, § 2911. The answer in this case was filed on September 19, 1895, and it shows that the plaintiff in error discovered the facts constituting the fraud it pleads in 1891. No appeal was ever taken from the Parks judgment, nor has it ever been reversed, modified, or set aside. Upon the principle to which we have adverted, it constitutes a complete estoppel against the plaintiff in error upon

every issue which was essential to its rendition, and the allegations of fraud and collusion in its procurement contained in the answer in this case were utterly immaterial, and present no issue in this case. The issue the plaintiff in error sought to tender thereby could not be tried in this collateral way, and the relief which the facts it pleads might once have warranted in a direct proceeding to avoid the judgment was barred by the statute of limitations of the state of Colorado.

A strong plea for the plaintiff in error was made in the brief and argument in this case on the ground that the upholding of the Parks judgment would open the door for corrupt municipal officers to permit unjust judgments to be rendered against their municipalities. But the great majority of municipal officers are upright, honest, and watchful of the public welfare. The actions of honest and faithful officials cannot be subjected to rules fit only for those who are dishonest and faithless. When a municipality is sued, and appears in court by its duly-authorized officers, that court must not presume that such officers are among the few who are untrue to their trusts, and refuse to give credence to their acts and statements. It is bound to presume that they are of the great majority that are honest, faithful, and worthy of credit. Moreover, municipal officers are the agents of the municipality. Under our system of government they are not selected by the creditors of the city or county, nor by the courts, but they are chosen by the municipality itself. If there is danger that such officers will violate their oaths, and corruptly barter away the rights of the people whom they represent, through the abuse of rules of action which have been established for honest men and faithful officials, the remedy is in the hands of the people. Let them elect honest and faithful agents, and the danger will disappear. It is a general rule of law that the principal, and not the opposite party, to a contract or transaction must suffer for the corrupt and fraudulent acts of the agent within the scope of his authority; and, whether or not this principle applies to a municipality to its full extent in law, it certainly does in morals, and no people who elect corrupt and dishonest officials to represent them can hope to entirely escape the natural and inevitable effects of their action.

The judgment below must be affirmed, with costs, and it is so ordered.